## MOROSS *v.* MOROSS.

GIFT OF LANDS—EVIDENCE.

> Evidence examined, and *held* not to establish a parol gift of lands to defendants from their parents, made with the intention of passing title, so as to create any special rights therein, though the parents frequently spoke of having "given" the property to defendants, and defendants had long been in possession of the same.

Appeal from Wayne; Brooke, J.   Submitted April 22, 1902.   (Docket No. 110.)   Decided September 17, 1902.

Bill by Alfred Charles Moross and Emily Catherine
Moross, by guardian, against Victor J. Moross, Emma
Ray, Celina Parent, Louisa V. Moross, and Augustus C.
Stellwagen, administrator, for a partition of certain real
estate. From a decree for complainants, defendants
appeal. Affirmed.

*Clark, Durfee & Allor*, for complainants.

*William B. Jackson* (*Cutcheon, Stellwagen & Mac-
Kay*, of counsel ), for defendants.

MOORE, J. This is an appeal from a decree in chancery.
The questions involved are so well stated in a written opin-
ion filed by the circuit judge that we insert it here:

" The complainants in this case are the infant children
of a son of Christopher Moross, deceased, and the bill is
filed by them to secure their distributive share of the
estate of their paternal grandfather and grandmother.
The answer and cross-bill of the defendant Victor J.
Moross, who is an uncle of the complainants, sets up that
during the lifetime of his father, Christopher Moross, a
certain piece of property, known as 152 Adams avenue,
was given to him by his father as a wedding present; and
the answer and cross-bill of Emma Ray and Celina Par-
ent, two daughters of the deceased, Christopher Moross,
sets up that some 26 years ago their mother, Emily Moross,
gave to them a piece of property now known as numbers
130 and 132 Adams avenue east, No. 130 going to Mrs.
Ray, and No. 132 to Mrs. Parent; that at that time the
deceased, Christopher Moross, had moved on said prop-
erty a double house; that he joined with his wife in the
gift of said property to the defendants Mrs. Ray and Mrs.
Parent. It appears further that another son of Christo-
pher Moross, named Scott Moross, had been given a cer-
tain piece of property during the lifetime of his father, but
that, he having died before Christopher Moross, upon his
death Christopher Moross reasserted his title to said prop-
erty.

" It is claimed by the three defendants, Emma Ray,
Celina Parent, and Victor J. Moross, that the parol gift
by their parents of the properties described, coupled with
the possession of the same by them covering a period of

from 20 to 27 years, and the fact that they have made valuable improvements upon the property, constitutes a set of circumstances which are sufficiently powerful to overcome the statutory provision that no estate or interest in lands shall be created except in such manner as the statute provides. They urge that it would be inequitable to them, after Christopher Moross and his wife had given them the properties in question, and had permitted them to live in them for such a long period of years, to now compel them to surrender the same to the estate of the decedent, and accept only their proportionate share of said estate. The equities of the case are met by these defendants by showing that Christopher Moross in his lifetime had advanced some money to Alfred Moross, the father of the complainants, and that at the time of the death of said Alfred the funeral expenses, amounting to some hundreds of dollars, were paid by Christopher Moross.

"On the part of complainants it is contended that the improvements made upon said properties by the defendants Victor J., Emma, and Celina are of no value to the premises in question; that they constitute simply repairs in wood to old wooden houses, and that the houses in question at this time are practically valueless, the value of the property in question being simply its land value; that, whatever the improvements were worth at the time they were put on by the defendants Ray and Parent, they have been fully enjoyed by said defendants, and that the estate is in no wise benefited by the same; the condition of the premises now being only what it would have been had the land lain vacant. It is further contended that it is enough that these defendants have had the use of the properties in question, rent free, during a period equal to an ordinary lifetime, and for the major portion of the time with the taxes thereon paid by Christopher Moross, and that, in addition to that, to permit such free occupancy to ripen into an absolute title in said defendants would be to work an injustice to these infants.

"The evidence as to the gift from Emily Moross to Mrs. Ray and Mrs. Parent is rather meager, and is wholly given by the parties in interest. Under my view of this testimony, I think it entirely inadmissible. This certainly is a claim by these parties against the estate of the deceased, and the gift, if it was made as testified to by the defendants, must certainly have been equally within the knowledge of the deceased, and therefore I do not think the testimony should be considered.

"Touching the gift from Christopher Moross to Victor J., his son, while it is certainly true that Christopher told outsiders that he had given this property to Victor, and even swore to it upon the stand in a case in which he sought to restrain a trespass upon the property, yet in the same case he declared that he was the holder of the legal title thereto, and averred under oath that he was the owner thereof. Christopher Moross was a man of very considerable interests, and, so far as the testimony discloses, a man of more than ordinary business capacity. He died possessed of a very large number of individual parcels of real estate, and was far more familiar with the necessary legal formalities attendant upon the transfer of a title or interest in real estate than the average layman. He lived to a very ripe old age, and remained in the free possession of his faculties almost up to the day of his death. Yet during all this time he never took the pains to execute a conveyance to Victor of the property which he had given. It must be presumed that he refrained from doing this with a purpose, and that it was his intention to retain the control of the property in question, and the right to dispose of it himself during his lifetime, if he so desired. The fact that when another son died, who had occupied property belonging to his father, he immediately resumed possession thereof, is strong corroborative proof that it was his intention to so retain control of the property in question as would enable him to resume possession thereof if he so desired during his lifetime.

"As to whether the late Emily Moross was a woman acquainted with business forms and the necessary steps to be taken in order to dispose of real estate or not, the testimony does not disclose. But, whether or not this be so, these other two defendants, Emma Ray and Celina Parent, are, and were during all the period of occupancy, up to the time of their mother's death, ladies of above the ordinary intelligence, and may be presumed to have known that it was absolutely necessary, in order to perfect their title, to secure from their mother a deed of the premises in question. This they did not do. In fact, the mother seems to have been entirely overshadowed by her husband, Christopher Moross, and, whenever the home of Mrs. Ray or of Mrs. Parent is spoken of, it is always Christopher who has given them their homes, instead of the mother.

"Upon consideration of the whole matter, I am of the opinion that no such gift was made by either Emily

Moross to Mrs. Ray and Mrs. Parent, or by Christopher Moross to Victor J. Moross, as should be sustained by a court of equity. These three defendants have had the free use of the properties in question, with the taxes paid during the greater portion of the time by Christopher Moross, and it seems to me no more than just that now they should be considered a part of the estate, and partitioned with the balance thereof. If they have become attached to the property by reason of their long residence therein, there is no obstacle to their securing possession thereof in the distribution. A decree will be entered for the partition of the entire estate of Christopher Moross and Emily Moross, including the three parcels in question."

The complainants insist that section 9509, 3 Comp. Laws, which reads, "No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by some person thereunto by him lawfully authorized by writing," is applicable to the case. Counsel for appellants insist they have brought themselves within the provisions of section 9513, 3 Comp. Laws, which reads as follows: "Nothing in this chapter contained shall be construed to abridge the powers of the court of chancery to compel the specific performance of agreements in cases of part performance of such agreements," and that they have performed their part of their agreement, and are entitled to have the land decreed to be theirs.

The law questions do not trouble us so much as does the question of whether there ever was a promise to deed these lands, and, acting under such promise, did defendants go into possession and make improvements? The original answer in the case averred the property was given to defendants as an advancement, which should be charged against defendants as of the date when they entered into

occupancy. After the trial proceeded for a time, by permission of the court the answer was amended so as to claim an absolute gift of the property to the defendants. There is plenty of testimony indicating that Mr. and Mrs. Moross talked about having given a home to the daughters, and by Mr. Moross that he had provided a home for his sons Victor and Scott; but no witness says that either the father or mother said they had given a deed of any real estate to their children, or had agreed to do so. Mrs. Moross was nearly 78 years old when she died. She was an invalid for years, though she was fully possessed of her mental faculties. Mr. Moross was an old man when he died. The real estate was assessed to him, and for a good proportion of the time, at least, if not all of the time, he paid the taxes upon it. This was known not only to him, but to his children. He was the owner of a good deal of property. He at one time had a talk with one of the lawyers for the appellants, who gives the following version of what occurred:

"The conversation was this: I says to Mr. Moross, 'You are getting to be an old man, and you ought to make a will.' Says he, 'I have got the papers all fixed.' 'Well,' I says, 'that isn't enough, in my judgment. You ought to make a will, or else, if you have got any papers, they ought to be put in some other person's hands, as an escrow, to be delivered to the parties entitled when you die.' 'Well,' he says, 'it is all right, anyway.' That was all I could get out of him."

As late as August, 1897, Christopher Moross filed a bill of complaint in a chancery suit, which was sworn to by him, in which he set out that he was the owner of the lot now claimed by Victor. It is true that upon the trial it is claimed he swore he had given the property to Victor, but the proceedings show the attention of both himself and Victor was challenged to the fact that the legal title was in Christopher. Shortly before his death, and while in the possession of all his faculties, he insisted upon having a quantity of money, which he had in the house, counted in the presence of his children, and put in a safe

place. When this was done he expressed himself as satisfied. He knew and the appellants knew that no deeds of the property now claimed by the appellants had been made and delivered to them. If the parents intended to devest themselves of the title to this property, and put it in the defendants, it is very strange that, with all the knowledge that all of the parties had of the situation, no steps were taken to accomplish that purpose. The record discloses that Mr. Moross was kind to his children; that he supplied them with vegetables from the cellar; that for a series of years he paid for their annual supply of coal, and whenever they needed anything for their comfort he furnished it. The relations of the father and mother to the children were of the pleasantest character. There is nothing to indicate that they at one time made a gift which they afterwards regretted, and for that reason did not make the gift effective by deeding the property. We are not satisfied from the evidence it was ever expected the title would pass.

The decree is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.